Thank you, Your Honors. I would like to reserve one and a half minutes for rebuttal, please. Just stop short of using up all that time there. I will. I'm going to try to. May it please the Court. My name is Barry Fleigenheimer. I represent Luis Quiroga. Your Honors, the issue is one. Was the evidence in the district court's pressure hearing sufficient or did it fail to establish, as I would submit it did, the emergency doctrine exception to the search warrant requirement that allowed for the search of the vehicle trunk, Mr. Quiroga's vehicle trunk? This Court has to look to, I believe, the district court. When you say the emergency doctrine, are you talking about the community caretaking doctrine? Yes. It's used. My understanding from reading the case is, Your Honor, that the community caretaking doctrine and the emergency doctrine are used interchangeably. All right. But you're not talking about exigent circumstances? I'm not, Your Honor. Okay. Just to make sure. Your Honor, and I think the test that the Court has to look at was set forth in the United States v. Cervantes, setting forth the emergency doctrine or the community caretaking doctrine factors. And there's three factors that the Court has to look at. And we would submit that they were not satisfying in this case, contrary to the district court, the lower court's finding. The first factor is that the police must have reasonable grounds to believe there's an emergency at hand and an immediate need for their assistance to protect life and property. Your Honor, the facts in this case are that there was a domestic dispute between Mr. Quiroga and his girlfriend that happened in the middle of the night, approximately 1 o'clock at night. Police were called. It included domestic violence. And Mr. Quiroga, the father of the child, took the child from the residence where he was with his mother. And approximately an hour after the incident, the police were called, came to the scene. The matter was reported. The following morning, the girlfriend, the mother of the child, with Mr. Quiroga's sister, went looking for Mr. Quiroga and the child. Did not find him. Around 11 o'clock that day when they returned to the apartment, they had another contact with Mr. Quiroga where he threatened where he acted in a way that was threatening to both the girlfriend and the sister where he used the instrument like a weapon and swung at the sister and jumped on the hood of a car and broke a window. None of this stuff is really central to the issue in the sense that hours later, there was a stop in Mr. Quiroga based on the report that he had been involved in this assault and the child had been in his custody and there was concern for the child. The question of whether these facts would justify the emergency doctrine. And we believe that, at least in the first factor, specifically, that the facts do not support the emergency doctrine being satisfied. What's missing? Well, Your Honor, there has to be an emergency at hand. In this case, the police have done very little to verify that the child – well, in fact, the child was not at risk. She was with the child. Well, we don't know that. The police didn't know that. The police didn't know that. They knew the child had been taken under circumstances involving violence. That's correct. At the time of the actual stop, the child was actually with the mother. And at the time of the stop, before the search was conducted, there was no effort to verify that. I thought the child was with the… Grandfather. With the grandfather. At 519, the stop. We just don't know that. Right? And the police have heard, as Judge Schwartzer mentioned, that there was a violent domestic episode. I think there's some police officer that's also heard the mother saying that the father might sell the kid for drugs. And I think this U.S. Supreme Court has said that we look at all the knowledge of all the police together, not just whoever made the stop. So why isn't there enough so that it comes within the emergency doctrine to look in the trough, sir? There's no history, there was no reporting that Ms. Groga had ever mistreated the child whatsoever. But there was evidence that he attacked his sister with a screwdriver or something. And there was evidence… That's correct. There was evidence of an attack on a close relative. And I wouldn't suggest that that was justifiable either. But the fact that… There was some reason to think that he was going around hurting people who were members of his family. Because he would hurt one person would not mean… I'm sorry, what? Because he would hurt one person or try to hurt one person wouldn't mean he necessarily hurt everybody. The evidence in the… In other words, there was evidence that he was out of control. There was certainly evidence of that. I would agree. And he'd had a dispute with – the evidence in the lower court was that he had a dispute not only with his girlfriend, but with his sister also. And they'd argued before and recently, I believe, was the evidence. But there had been no – there had been no evidence that he ever mistreated his daughter in any way. This case reminds me of the flip side of the case that the Supreme Court decided last year about the police – the woman who kept going to the police and saying, my husband's off with the children, and something terrible is going to happen if you don't find him. And, in fact, they didn't find him. And, in fact, they murdered the children. In this instance, if the police hadn't gone forward with what they did, it seems to me they would have been subject to severe criticism. Well, I guess, Your Honor, I guess I'd suggest this. The facts were that around 5 o'clock that afternoon, the child was reunited with his mother. 5-19 was when the stop occurred. So after that – But they didn't know that. But they made – they made – okay. The emergency doctrine, the cases that define it, there seems to be a need to manage the situation. There's a couple of the cases where officers go into a room in a motel because they believe there's going to be an explosion of a meth lab. There's another case where a domestic dispute occurs where a child is in the doorway of the house. The father's inside. The mother's outside. They're yelling both ways. The police have to go in because they believe there's a weapon at hand. In this situation, Mr. Kuroga is under arrest. A moment could have been taken to call the mother to see if the child was missing. But there was nothing really that would point to the fact that the child would be in the trunk. Well, except that he – last they knew he had her and he wasn't – she wasn't in the car. So if she wasn't in the car, where was she? Fifteen hours – well, it would be – As of about a few hours earlier, their information was that he had her. Your Honor, as of the report that he took, there was no – there was no observation that he had the daughter other than the time that he left the home with the daughter. That was 15 hours earlier. There was nothing that would mean – that would not infer that she would be in the trunk of the vehicle. The fact that she was last seen in the car 15 hours before – it's a car. It's a transitory object. And the fact that she was in the car 15 hours earlier wouldn't imply or infer that she would remain in the car for the 15-hour period. And certainly there was no evidence that she would be in the trunk. In fact, at the time that she was taken to the residence, she was put in the car seat, locked in the car seat. Care was taken to take care of her to put her in the car seat then. When Mr. Kuroga was stopped 15 hours later, the car seat wasn't in the vehicle. I know that this may cut both ways. The government's argued that would be suggesting maybe she's somewhere else like the trunk. Well, why would she be in the trunk? There's no specific fact that would point to that. There's – I think it's one of the reasons I react to the case this way is because there's no – is there any sense that there weren't factual ulterior motives in looking at this trunk? Was there any facts? Is there any notion that the police – I understand this isn't strictly relevant, but that there were any ulterior motives other than looking for the child? And so why they actually opened that trunk? Well, you know, the second factor in the Cervantes test looks at the motive of the officer. Right. It's true the officer's test – I wouldn't suggest otherwise. Officers testify they looked in the trunk to find – to find – to see if the child was there. Another – this Court has said another time it's divining the – what the motive of the officer. It's really difficult to know what the true intent of the officer could be. But there are facts. There was reports that Mr. Carroga – well, one, that he had had these instruments he used as weapons. They found that on this person. So would they be looking for anything else? Yes, they could easily be looking for something else. There's also reports that he had used drugs. Now, they could easily be looking in the trunk, hoping, thinking that bizarre behavior. He may possess drugs, and this would certainly bolster the jeopardy he would be in. So, yes, I think, indeed, there would be other reasons for an officer to look in the trunk of Mr. Carroga's vehicle. Your Honor, so in terms of managing the situation, Mr. Carroga's – Put your time up, I'm afraid. But since you were answering, Judge Berzon, we'll give you another minute. But we're really in trouble on our time today. So please get done within a minute. I think what I'll do is I'll save my argument for rebuttal. All right. Thanks. We will give you a minute for rebuttal. And we'll remind the government, as all the parties in the courtroom today, no one has to use up their full amount of time. So if someone thinks they can cover something more quickly, we'd appreciate it. Thank you. Good morning, Your Honors. My name is Patricia Lawley. I represent the United States of America, and I was also the prosecutor in this case. The issue before the court is whether the police properly searched the trunk of Carroga's car when looking for a 20-month-old baby, last seen with Carroga, who in the prior 15 hours had assaulted the baby's mother, his own sister, damaged the sister's car, was reported to be under the influence of alcohol and crack cocaine, and where the child was last seen in the same vehicle that was searched. Well, let me ask you, did the police officers, when they arrested Carroga, did they ever ask Carroga, where's the child? Yes, Your Honor, they did. They asked Carroga. At the time of the arrest? Yes, Your Honor. Before they searched the trunk? That is correct, Your Honor. And what happened? They only searched the trunk after, when that question was posed, the defendant, Mr. Carroga, was unresponsive. Okay. Because Mr. Carroga was unresponsive, they opened the trunk of the car. Under Cervantes, there is the need for an emergency at hand, and it's hard to imagine a situation greater than this emergency, where a 20-month-old baby has been missing with a person where police are completely aware at the time of the arrest, three officers testified before Judge Peckman, that they knew that an assault of the baby's mother had occurred. They knew about the attempted stabbing of the sister. They knew about the vehicle destruction. And they knew that a baby was missing and that Mr. Carroga was potentially under the influence. It was these facts and circumstances that led them to arrest Mr. Carroga, and they had probable cause to arrest him for the domestic violence assault and for other reasons. But their primary motivation when searching the car was simply to find the child. If there was evidence, if there was motivation by the officers at the time of the arrest to find other evidence of other crimes, it's important to note that they did not search the blood box, because under Cervantes, the area to be searched has to be connected to the emergency at hand. Logic tells us that a 20-month-old baby would not be secreted in a glove compartment. They did not look there. And it shows that the officers were not motivated to find evidence of another crime. Not only was the emergency doctrine or the community caretaking function appropriate in this case, but also under exigent circumstances. The exigent circumstances. And that doesn't come into play unless it's probable cause. Yes, Your Honor. There's no finding of probable cause. Your Honor, here we have probable cause for the police to believe that based on what they know about Carroga, his violent behavior, his bizarre and unpredictable acts that occurred in the last 15 hours, that there was probable cause to believe that the child may have been in the car. There was no car seat in the interior of the car. There was no evidence of the child having been inside the car. You don't need this if you prevail on the first point, right? I'm sorry? You don't need this if you prevail on the first point. That is correct. And it seems decidedly weaker, does it not? Yes. So maybe there's not too much point in going ahead. Thank you, Your Honor. Your Honor, unless you have questions of me, I will take my leave. I have no questions. Thank you. Mr. Fleigenhauer, we'll give you a minute for rebuttal. Thank you, Your Honor. I would point the Court, looking at this case, to the case of United States v. Bradley cited in the government's brief. In that case, there was an unsupervised child. A mother was arrested. The child could not be located. And they went into a home because they were afraid that the unsupervised child could be left alone at night. In that case, as opposed to this case, there had been reasonable efforts by law enforcement to locate the child. The line of the case was that the child had been left alone at night. Hadn't the officers driven around for a couple hours with the mother and the sister earlier in the day looking for the child? I do not believe that's the testimony at all. I thought it was. I believe, and Ms. Lawley, who was there, might correct me if she had this opportunity, but my sense is, Your Honor, that there had been no driving around looking for the child. There had been a bulletin put out that if you see Mr. Kuroga to stop this case. My question was that although they were not responsive at first, that the second time the two women went to them, they spent several hours trying to find the child. I think that the mother and the sister went around looking for the child. Perhaps. I understand. And, Your Honor, this is a critical point, I think, because there had been very, the police kind of stretched here and claimed an emergency. But, in fact, they made almost no effort to locate the child prior to the stop of Mr. Kuroga's vehicle. And in Bradley, that was a key point for this Court. In Bradley, the officers in that case had gone around looking for the child. In this case, and I believe the evidence is clear, the officers, the officers made no effort to go around and look for the child. They just put out a bulletin that there had been a probable cause to arrest Mr. Kuroga, and they stopped his vehicle. And it's at that point they decided to search the vehicle. Not believe there were enough of an emergency before that, but during the 15 hours before that, to make any effort to look for Mr. Kuroga or this child. For Mr. Kuroga, they put out a description of his vehicle so that a stop could be made. But I believe there was no effort to locate the child before that. I think the time is used all the time. Thank you. We appreciate the argument. Mr. Kagan, I am from Ms. Lawley. The case of U.S. v. Kuroga shall be submitted. Thank you.
judges: Gould, Berzon, Schwarzer